UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LARRY NORWOOD, | ) | No. CV 09-3996-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Larry Norwood filed a complaint on June 19, 2009, seeking review of the Commissioner's decision denying his application for disability benefits. On November 6, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on December 30, 2009.

**BACKGROUND**

On November 9, 2006, plaintiff, who was born on February 6, 1959, applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and Title XVI of the Act, the Supplemental Security Income program ("SSI"), claiming an inability to

1 work since June 1, 1994, due to fatigue, pain, diarrhea, cramping, nausea, and depression. A.R. 101-10. The plaintiff's applications were initially denied on May 11, 2007, and were denied again on August 17, 2007, following reconsideration. A.R. 56-70. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Ariel L. Sotolongo ("the ALJ") on September 30, 2008. A.R. 19-51, 72. On January 29, 2009, the ALJ issued a decision finding plaintiff is not disabled. A.R. 5-18. The plaintiff appealed this decision to the Appeals Council, which denied review on April 18, 2009. A.R. 1-4.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 552 U.S. 1141

(2008); Vasquez, 572 F.3d at 591.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not,

in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Step One). The ALJ then found plaintiff has the following severe impairments: "human immunodeficiency virus (HIV); neuropathy in the lower extremity; foot calluses; alcohol abuse; and depression" (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff cannot perform his past relevant work. (Step Four). Finally, the ALJ found plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

**II**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)"). Here, the ALJ found plaintiff has the RFC to perform the following limited range of light work:[1]

---

[1] Under Social Security Administration ("SSA") regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

4

>The [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for up to 4 hours in an 8[-]hour day; and sit for up to 6 hours in an 8[-]hour day. The claimant can also engage in occasional climbing of ladders, ropes, and scaffolds; and may do all other postural activities on a frequent basis. The [plaintiff] must also only occasionally be exposed to unprotected heights; and must be limited to simple, repetitive work.

A.R. 13. However, the plaintiff contends this RFC determination is not supported by substantial evidence because the ALJ did not properly consider a nonexamining physician's opinion and erroneously determined plaintiff was not a credible witness.

**A. Nonexamining Physician's Opinion:**

The ALJ "may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). While "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ and Appeals Council] may not ignore these opinions and must explain the weight given to the opinions in their

---

pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b). "[T]he full range of light work requires standing or walking for up to two-thirds of the workday." Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

decisions." SSR 96-6p, 1996 WL 374180, *2 (S.S.A.);[2] see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence. . . ."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions."); Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005) ("[T]he regulations require an ALJ to consider opinions offered by medical experts, [but] an ALJ is not bound by those opinions and must evaluate them in the context of the expert's medical specialty and expertise, supporting evidence in the record, and other explanations regarding the opinion.").

On May 2, 2007, M.I. Laichtman, M.D., a nonexamining physician, in completing a SSA assessment form, determined, among other things, that plaintiff: can occasionally lift and/or carry up to 20 pounds, push and/or pull with his lower extremities, and climb ladders, ropes

---

[2] Social Security Rulings constitute the SSA's interpretations of the statute it administers and of its own regulations. Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005). Although Social Security Rulings do not have the force of law, Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996), nevertheless, once published, they are binding upon ALJs and the Commissioner. Holohan v. Massanari, 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001).

and scaffolds; can frequently lift and/or carry up to up to 10 pounds, climb ramps and stairs, balance, stoop, kneel, crouch and crawl; can sit, stand and/or walk for about 6 hours in an 8-hour workday; and should avoid concentrated exposure to hazards.[3]  A.R. 365-70.  The plaintiff contends the RFC assessment is not supported by substantial evidence because "the ALJ ignored without explanation [Dr. Laichtman's] findings that Plaintiff should avoid concentrated exposure to hazards such as machinery and excluded the limitation from Plaintiff's RFC."  Jt. Stip. at 9:14-20.  There is no merit to this claim.

   Initially, the ALJ specifically referred to Dr. Laichtman's opinions in the disability decision, noting the opinion that plaintiff "should avoid concentrated exposure to hazards, such as unprotected heights[,]" A.R. 15, and determined that plaintiff "must . . . only occasionally be exposed to unprotected heights. . . ."  A.R. 13.  Thus, the ALJ clearly considered Dr. Laichtman's opinions in determining plaintiff's RFC, as she stated.  See A.R. 15 ("The claimant's Physical RFC Assessment concurred with the[] findings [of Dr. Enriquez], and also imposed additional limitations on the claimant [citing Dr. Laichtman's form, Exh. 7F].").

   Even assuming *arguendo* the ALJ erred in not including a limitation against exposure to hazardous machinery in the RFC assessment, any such error was harmless since, as discussed below,

---

[3] To be precise, Dr. Laichtman checked a box that plaintiff should "avoid concentrated exposure" to "Hazards (machinery, heights, etc.)[.]"  A.R. 369.

neither of the "representative occupations" the ALJ determined plaintiff can perform in the national economy -- assembler (Dictionary of Occupational Titles ("DOT")[4] no. 712.687-010) and packer (DOT no. 920.687-082) -- requires concentrated exposure to hazardous machinery. U.S. Dep't of Labor, <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u>, 288, 310 (1993); see <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (citations and internal quotation marks omitted)).

**B.    Credibility:**

The plaintiff testified at the administrative hearing that he is unable to work due to pain throughout his body, numbness in his feet and hands, fatigue, nausea, diarrhea, difficulty sleeping, skin itching, depression, social anxiety disorder, paranoia and anxiety. A.R. 28-29, 31-34, 39-41.  He also stated he suffered severe brain damage when he was struck in the head three times, which caused memory loss.  A.R. 37.  Further, plaintiff testified he experiences pain and diarrhea some months, but not others, and he is fatigued every day. A.R. 29-30, 32, 34.  When he experiences pain, plaintiff stated that it is difficult to walk for half a block, A.R. 31, and he lies down every day for several hours due to fatigue.  A.R. 34-35.  Finally, plaintiff testified he tried to commit suicide several times, but not

---

[4] The DOT is the Commissioner's primary source of reliable vocational information.  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995).

8

within the past five years.  A.R. 42-43.

Once a claimant has presented objective evidence that he suffers from an impairment that could cause pain or other nonexertional limitations,[5] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's subjective complaints are not credible, she "'must provide specific, cogent reasons for the disbelief.'"  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007).  Where there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Vasquez, 572 F.3d at 591.  "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'"  Orn, 495 F.3d at 636 (citations omitted); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

---

[5]  "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

9

1        Here, the ALJ found plaintiff's "statements concerning the
2   intensity, persistence and limiting effects of [his] symptoms [were]
3   not credible to the extent they [were] inconsistent with the [RFC]
4   assessment" for several reasons.  A.R. 14.  First, the ALJ found
5   plaintiff's "activities of daily living are inconsistent" with his
6   description "of a disabling condition."  Id.  At the administrative
7   hearing, plaintiff testified he regularly exercises for about an hour
8   by walking, does volunteer work, such as feeding the homeless, cooks,
9   cleans, does laundry, and shops – "the whole nine yards."  A.R. 36.
10  "An ability to perform such [daily] activities may be seen as
11  inconsistent with the presence of a condition which would preclude all
12  work activity."  Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir.
13  1990); see also Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009)
14  (ALJ properly rejected claimant's testimony in part because she led
15  "an active lifestyle, including cleaning, cooking, walking her dogs,
16  and driving to appointments"); Stubbs-Danielson v. Astrue, 539 F.3d
17  1169, 1175 (9th Cir. 2008) (ALJ properly rejected claimant's testimony
18  because she "has normal activities of daily living, including cooking,
19  house cleaning, doing laundry, and helping her husband in managing
20  finances").

22       Further, the ALJ found plaintiff's complaints of disabling pain
23  and daily fatigue were contradicted by the medical record.  A.R. 14-
24  15.  Regarding pain, the ALJ noted that:

26       While the [plaintiff] has neuropathy in his feet, . . . this
27       condition appears to be mild.  Consultative examiner Dr.
28       Enriquez noted that although the [plaintiff] had sensory

10

>deficits in his feet, [plaintiff's] gait and balance were within normal limits. Dr. Enriquez also noted that the [plaintiff] did not require an assistive device for ambulation. Indeed, treating records reveal that the [plaintiff] consistently exhibited a normal gait upon examination at AIDS Healthcare Foundation. The [plaintiff's] neuropathy has also continued to improve. In fact, during physical examinations in 2008, the [plaintiff] showed no signs of neuropathy. Also, in March 2008, healthcare providers noted that the [plaintiff's] neuropathy was controlled on medication.

A.R. 14-15 (citations omitted). This finding is supported by substantial evidence in the record,[6] see, e.g., A.R. 185, 192, 270, 276-77, 421, 441-42, 446, and "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see also Stubbs-Danielson, 539 F.3d at 1175 (ALJ properly rejected claimant's testimony in part because her "allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence."). Regarding daily fatigue, the ALJ found that, "on numerous occasions [plaintiff] has denied other HIV-related symptoms such as fever, fatigue, and weight loss." A.R. 15 (citations omitted). This finding also is supported by substantial evidence in the record, see, e.g., A.R. 270,

---

[6] Indeed, plaintiff cites no evidence to contradict the ALJ's findings. See Jt. Stip. at 3:2-5:14, 8:5-23.

1  276, 421, 441, 446, 458, and supports the ALJ's adverse credibility
2  determination. Stubbs-Danielson, 539 F.3d at 1175; Carmickle, 533
3  F.3d at 1161.

5  Thus, "the ALJ provided 'clear and convincing' reasons for
6  rejecting [plaintiff's] testimony as not credible[,]" Tommasetti, 533
7  F.3d at 1037, and there is no merit to plaintiff's claim to the
8  contrary.

**III**

11  At Step Five, the burden shifts to the Commissioner to show the
12  claimant can perform other jobs that exist in the national economy.
13  Bray, 554 F.3d at 1222; Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th
14  Cir. 2007). To meet this burden, the Commissioner "must 'identify
15  specific jobs existing in substantial numbers in the national economy
16  that [the] claimant can perform despite h[is] identified
17  limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)
18  (quoting Johnson, 60 F.3d at 1432). There are two ways for the
19  Commissioner to meet this burden: "(1) by the testimony of a
20  vocational expert, or (2) by reference to the Medical Vocational
21  Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[7]

---

[7] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Bray, 554 F.3d at 1223 n.4. However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." Thomas, 278 F.3d at 960; Bray, 554 F.3d at 1223 n.4.

Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, Valentine, 574 F.3d at 690; Thomas, 278 F.3d at 956, and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1995) (quoting Delorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001).

Here, in response to a hypothetical question setting forth plaintiff's RFC, vocational expert Susan Green testified plaintiff can work as an "assembler" (DOT no. 712.687-010) and "packer" (DOT no. 920.687-082). A.R. 45-47. However, plaintiff contends both these jobs are inconsistent with Dr. Laichtman's opinion that plaintiff should avoid "concentrated exposure to hazards such as machinery." More specifically, plaintiff argues that the job of "assembler" requires use of "automatic equipment" to heat, bond and weld parts together and the job of "packer" requires use of a "cutting mechanism[,]" see U.S. Dep't of Labor, Dictionary of Occupational

13

1  Titles, 708, 937 (4th ed. 1991); thus, plaintiff claims he cannot
2  perform these jobs because he "would constantly be exposed to
3  machinery." Jt. Stip. at 12:15-14:6, 15:22-27.  However, there is a
4  significant difference between machinery and "hazardous machinery,"
5  which refers to "moving mechanical parts, of equipment, tools, or
6  machinery."  SSR 96-9p, 1996 WL 374185, *9 (S.S.A.).  Since neither
7  the "assembler" job nor the "packer" job requires exposure to
8  "hazardous machinery," Selected Characteristics of Occupations Defined
9  in the Revised Dictionary of Occupational Titles at 288, 310, the
10 failure to include Dr. Laichtman's limitation precluding "concentrated
11 exposure to hazards" in the hypothetical question to the vocational
12 expert was, at most, harmless error.  Tommasetti, 533 F.3d at 1038.
13 Therefore, the vocational expert's testimony constitutes substantial
14 evidence to support the ALJ's Step Five conclusion that plaintiff can
15 perform a significant number of jobs in the national economy

**ORDER**

   IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  June 17, 2010            /S/ ROSALYN M. CHAPMAN
                                    ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

R&R-MDO\09-3996.mdo
6/17/10

14